## DULL *v*. CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 2,669. Filed February 17, 1899.]

PLEADING.—*Complaint.*—*Construction.*—A complaint must be construed upon the theory which is most apparent and clearly outlined by the facts stated therein. *p, 575.*

SAME.— *Complaint.*— *Personal Injury.*— *Negligence.*— *Wilfulness.*— There is no such thing in law as wilful negligence, and a complaint for personal injuries must proceed either upon the theory of wilfulness or negligence. *pp. 575, 576.*

RAILROADS. — *Killing Child on Track.*— *Complaint.*—*Wilfulness.*— *Negligence.*—A complaint against a railroad company for the killing of a child, charging that the company wrongfully and negligently permitted its agents and employes to run a train at an unlawful rate of speed in violation of a city ordinance; that the engineer in charge of the train could have seen the child upon the track if he had looked, but that he negligently failed to keep a lookout ahead, and negligently failed to see the child; and that the employes on account of their gross negligence in running the train at an unlawful rate of speed were unable to control the train and stop it upon seeing the child; and that the child was wilfully, carelessly, and negligently killed, etc., charges a negligent, and not a wilful killing. *pp. 578, 579.*

SAME.—*Child on Track.*—*Contributory Negligence.*—A child seven years of age, physically and mentally vigorous and intelligent for one of her age, who was accustomed to railroads, and had been frequently cautioned about the danger of going upon the railroad track, was chargeable with contributory negligence in standing on the track while an approaching train ran 500 feet after it came to where she might have seen it, and until it struck her. *pp. 579-581.*

NEGLIGENCE.—*When a Question of Fact.*—Where there is room for difference of opinion between reasonable persons as to the existence of facts from which negligence, if found, must be inferred, or where there is room for difference of opinion as to inferences which might be fairly drawn from conceded facts, the question of negligence must be left to the jury, as one of fact. *p. 585.*

SAME. — *Person on Track.* — *Contributory Negligence.* — *Proximate Cause.*—An engineer was running a train at an unlawful rate of

speed when he discovered a person upon the track so near that it was impossible to stop the train before reaching such person. The engineer sounded the danger signals, but made no attempt to slow up or stop the train which ran upon and killed the person. *Held*, that the contributory negligence of the person on the track was the proximate cause of the injury, and that the railroad company was not liable. *pp. 589-593.*

NEGLIGENCE.—*Person on Track.—Trespasser.—*A railroad company is not liable for an injury to a trespasser upon its track unless the injury is wilfully inflicted. *pp. 593-595.*

From the Delaware Circuit Court. *Affirmed.*

*J. N. Templer, C. C. Ball* and *E. R. Templer* for appellant.

*B. K. Elliott, W. F. Elliott, J. T. Dye* and *Ryan & Thompson,* for appellee.

WILEY, J.—Appellant sued appellee for the alleged negligent killing of his infant child. The complaint is in two paragraphs. In the first it is charged that appellee, on October 22, 1896, owned and operated a railroad passing through the city of Muncie; that appellant had a daughter, Vonnie Dull, seven years old, who on said day, without his knowledge, consent, or fault, left his residence, which was near appellee's line of road, and wandered onto appellee's track; that when she was on said track she was in plain view, and could have been seen from the east for a distance of three-quarters of a mile; that there is nothing in the way to obstruct the view of the engineer, fireman, or other employe of appellee riding on a locomotive traveling west from seeing said child upon said track had they looked, and, if they had so looked, they could have seen her in ample time to have stopped the train before striking her; that on said day appellee ran its locomotive and train of cars westward on its track, which train was about twenty minutes late arriving at Muncie; that coming into said city said train was running about sixty miles per

hour; that as said train approached said child she was standing on the main track, looking north, waving a flag to an engineer on a Lake Erie & Western train, whose track runs parallel with appellee's and about forty feet to the north. That some of the employes on the Lake Erie & Western train saw said child, and seeing the danger she was in from appellee's train, tried to warn her, but failed in their purpose; that she was so young that she mistook their warnings as a salute to her; that she did not see the approach of appellee's train, or hear the danger signals sounded, until said train was so near, and going so fast, that she could not get off the track in time to avoid being struck; that appellee's engineer negligently failed to keep a lookout ahead, and negligently failed to see said child when he could have seen her, and thus avoid the injury; that said engineer did not slack the speed of the train upon seeing said child, "but simply contented himself with whistling the danger signals about 550 feet away from her;" that he wilfully and negligently allowed said train to rush on until it reached and struck said child; that, after so striking said child, the engineer for the first time applied the air brakes, and that the train then ran 250 feet before it could be stopped; that, if said train had been going at a lawful rate of speed, said accident could have been prevented, and said train stopped within fifty feet after said danger signals had been sounded; that by an ordinance of the city of Muncie, the running of trains within the corporate limits at a greater rate of speed than eight miles per hour was prohibited, and declared unlawful; that said train was being run at an unlawful rate of speed; that on account of the gross negligence, carelessness, and recklessness in so running said train at such unlawful rate of speed the employes in charge thereof were

unable to control the same upon seeing said child, and that said child was wilfully, carelessly, and recklessly killed; that said injury resulted without any fault, negligence, or carelessness of the said child, or on the part of appellant.

The only material difference between the first and second paragraphs of complaint is that in the second it is charged that the engineer in charge of the locomotive did see appellant's child a distance of 600 feet before reaching it, and, after seeing her, he did not stop the train, or slacken its speed. The case was put at issue by an answer in general denial. Trial by a jury, and a special verdict returned under the law of 1895. Appellant and appellee each moved for judgment on the special verdict; that of appellant being overruled and that of appellee being sustained. Appellant's motion for a *venire de novo* and a new trial were respectively overruled.

Before proceeding to consider the special verdict, it is important that we first determine whether the complaint proceeds upon the theory of wilfulness, or merely that of negligence. As we must be guided by the complaint itself, and not by what counsel say about it, we must consider its averments, and in doing this we must keep in view the marked distinction between the terms "wilfulness" and "negligence." The meaning of wilfulness, as given by Webster, is: "The quality of being wilful; obstinacy, stubbornness; perverseness; voluntariness." The supreme court of judicature of England has defined the word wilful as follows: "Wilful is a word of familiar use in every branch of law, and although in some branches of the law it may have a special meaning, it generally, as used in courts of law, implies nothing blamable, but merely that the person of whose action or default the expression is used, is a free agent, and that

what has been done arises from the spontaneous action of his will. It amounts to nothing more than this, that he knows what he is doing, and intends to do what he is doing, and is a free agent." *In re Young*, L. R. 31 Ch. Div. 168; *State* v. *Clark*, 29 N. J. L. 96; *Highway Commissions* v. *Ely*, 54 Mich. 173, 19 N. W. 940; *Newell* v. *Whitingham*, 58 Vt. 341, 2 Atl. 172. In *Fuller* v. *Chicago, etc., R. Co.*, 31 Ia. 187, it is said: "It is said by defendant's counsel that the word 'wilfully' implies the idea of malice of a mild kind, an evil intent without excuse. Such may be its meaning in indictments and criminal statutes. But it is not to be so understood here. The word means 'obstinately, stubbornly; with design; with a set purpose,' and this definition must be applied to it where it occurs in the statute under consideration." In Texas it was said: "A wilful act is one committed with an evil intent." *Bowers* v. *State*, 24 Tex. App. 542, 7 S. W. 247. There is a marked distinction between the words 'wilful' and 'reckless,' and recklessness does not necessarily imply wilfulness. A grossly careless act may be characterized as reckless, and serious consequences may result from it. Yet such consequences would not necessarily be wilfully brought about.

The complaint must be construed upon the theory which is most apparent and clearly outlined by the facts stated therein. *Pittsburgh, etc., R. Co.* v. *Sullivan*, 141 Ind. 83, 27 L. R. A. 840; *Jones* v. *Cullen*, 142 Ind. 335; *Batman* v. *Snoddy*, 132 Ind. 480. As was said by Comstock, J., in *Cleveland, etc., R. Co.* v. *Dugan*, 18 Ind. App. 435: "As only one theory can be contained in a single paragraph, the court must construe the pleading most strongly against the pleader, and determine the theory from the prominent or leading allegations of the pleading." As has been held in

many cases, there is no such thing in law as wilful negligence, and the complaint must proceed upon either wilfulness or negligence, and cannot charge both; that is, they cannot be charged in one and the same paragraph. *Belt, etc., R. Co.* v. *Mann*, 107 Ind. 89; *Pennsylvania Co.* v. *Sinclair, Adm.*, 62 Ind. 301; *Highland Ave., etc., R. Co.* v. *Winn*, 93 Ala. 306, 9 South. 509; *Verner* v. *Alabama, etc., R. Co.*, 103 Ala. 574, 15 South. 872. In *Louisville, etc., R. Co.* v. *Bryan*, 107 Ind. 51, appellee sued to recover damages for the alleged killing of his team at a crossing. One paragraph was based upon negligence merely, with the necessary averment that he was without fault. In the other he attempted to plead facts constituting wilfulness. The charging part of the latter paragraph was as follows: "And that said collision was caused by the reckless, negligent, and wilful conduct of said employes and servants of said defendant in the management of said locomotive, in this, to wit: that said locomotive was being propelled at an exceedingly high and dangerous rate of speed, and was being propelled backwards, and that the whistle on said locomotive was not sounded, and the bell was not rung, to give warning of the approach of said locomotive; * * * that said crossing was made extra dangerous by the track being hidden from view for some distance by intervening buildings, all of which was well known to said defendant, and its servants, etc." In that case Mitchell, J., said: "That the conduct imputed to the employes of the railway company was negligent, cannot be doubted, but negligence, no matter how gross, cannot avail in an action where it is necessary, on account of the plaintiff's contributory negligence, to aver and prove that the injury was inflicted by design or with an actual or constructive intent. In such a case, it is incumbent on the plaintiff to aver and prove

that the injury was intentional, or that the act or omission which produced it was wilful and of such a character as that the injury which followed must reasonably have been anticipated as the natural and probable consequence of the act. * * * To constitute a wilful injury, the act which produces it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi* criminal." Citing, *Louisville, etc., Canal Co.* v. *Murphy*, 9 Bush. 522; *Louisville, etc., R. Co.* v. *Filbern*, 6 Bush. 574; *Peoria Bridge Assn.* v. *Loomis*, 20 Ill. 235. In the case from which we have just quoted it was held that the facts charged failed to bring the case within either of the conditions expressed, or to indicate an actual or constructive intent on the part of the appellant. In that case the jury found for appellee on the second paragraph, and for the appellant on the first; in other words, they found for appellee, on the ground that the injury was inflicted wilfully. The learned judge further said: "That the appellant may have been grossly and culpably negligent, may be admitted, but until the plaintiff is willing to assert that he himself was without fault, he is not, upon the specific facts stated in the paragraph under consideration, entitled to maintain an action." * * * "The words 'wilful' and 'negligent' used in conjunction, have not always been employed with strict regard for accuracy of expression. To say that an injury resulted from the negligent and wilful conduct of another, is to affirm that the same act is the result of two exactly opposite mental conditions. It is to affirm in one breath that an act was done through inattention, thoughtlessly, heedlessly, and at the same time purposely by design. It seems to be supposed

that by coupling the words together, a middle ground between negligence and wilfulness, between acts of nonfeasance and misfeasance, may be arrived at. It is only necessary to say that the distinction between cases falling within the one class or the other, is clear and well defined, and cases in neither class are aided by importing into them attributes pertaining to the other." See, also, Beach on Cont. Neg., 67, 68. It was held that the second paragraph did not charge a wilful injury, and, as it did not aver that the plaintiff was free from fault, the demurrer to it should have been sustained. In *Parker, Adm., v. Pennsylvania Co.*, 134 Ind. 673, 23 L. R. A. 552, it was said: "Wilfulness does not consist in negligence. On the contrary, as illustrated by the cases of Bryan and of Mann, heretofore cited, the two terms are incompatible. Negligence arises from inattention, thoughtlessness, or heedlessness, while wilfulness cannot exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence cannot be of such a degree as to become wilfulness." See, also, *Terre Haute, etc., R. Co. v. Graham*, 95 Ind. 286; *Cleveland, etc., R. Co. v. Tartt*, 12 C. C. A. 618, 64 Fed. 823.

The complaint in this case avers that appellant and his child were free from negligence contributing to the injury. This allegation itself tends strongly to show that the complaint is based upon negligence and not wilfulness; for the averment of freedom from contributory negligence has no place in the complaint for an injury wilfully inflicted. *Pennsylvania Co. v. Sinclair, supra; Cincinnati, etc., R. Co. v. Eaton, Adm.*, 53 Ind. 307. Now, if we take each paragraph of the complaint, and group together the charging parts, we find the following facts stated: That the engineer could have seen appellant's child upon the

track if he had looked, but that he negligently failed to keep a lookout ahead, and negligently failed to see said child; that the appellee wrongfully and negligently permitted its agents and employes to run a train at an unlawful rate of speed, in violation of the city ordinance; that said engineer carelessly and recklessly ran said locomotive engine, at the time and place, where said child was killed, at an unlawful rate of speed; that on account of the gross negligence and recklessness of appellee, its engineer, conductor, the employes and agents in running said locomotive and train at an unlawful rate of speed through the city, said employes and agents were unable to control said train, and stop it, upon seeing said child, and said child was wilfully, recklessly, carelessly, and negligently killed, etc. Looking at the averments in each paragraph of the complaint, in the light of the meaning of the terms, "wilfulness," and "negligence," and judged by the authorities we have cited, we must hold that the complaint is based upon the theory of negligence and not upon wilfulness. The very fact that the complaint averred that the train was being run at so high, reckless, and negligent rate of speed that appellee's servants were unable to control and stop it after observing the danger the child was in, negatives every presumption of wilfulness, for, as we have seen, when an act is wilfully done, it is done with a purpose or design. Therefore, taking the complaint as a whole, construing its "prominent and leading allegations," most strongly against the pleader, as we must, we are unable to see anything in it which will authorize us to say that the act complained of was wilfully done.

This leaves the complaint to rest upon negligence on appellee's part, and freedom from negligence on

the part of appellant and the child.   Having deter-
mined the theory of the complaint, we will look to the
special verdict for the facts.   So far as the facts found
are pertinent to the questions involved, they are as
follows:  That appellant's child was killed at about
10 o'clock a. m. by being struck by appellee's loco-
motive; that the locomotive and train drawn by it,
was running twenty-five miles per hour; that it was
passing through the corporate limits of the city of
Muncie; that there was an ordinance of said city lim-
iting the speed of trains to eight miles per hour; that
appellant's child was standing on the south rail of
appellee's main track, and facing north; that she had
in her hand a sprig of cedar, and was waving it at per-
sons on a Lake Erie & Western train, then passing
parallel with appellee's track, and about forty feet
north; that her attention was attracted by said Lake
Erie & Western train; that persons on said train made
signals to her to warn her of her approaching danger;
that she did not hear or see appellee's train approach-
ing; that in standing on said track at the time and
under the circumstances she exercised "such ordinary
care as a reasonable and prudent child of the same
age, experience, and capacity, *should have exercised
under similar circumstances*," considering her age; that
the whistle on appellee's locomotive was sounded near
the bridge over White river; that it was sounded re-
peatedly; that the danger signal was sounded con-
tinuously; that said child was used to going on er-
rands, and crossing the railroad tracks in going on
errands and to school; that she was capable of going
on errands and making purchases without assistance;
that the air brakes on the locomotive were not ap-
plied when the danger signals were given; that appel-
lant's child, Vonnie Dull, understood that it was dan-
gerous to stand on a railroad track when a train was

coming; that she was used to railroads, and instructed
as to their dangers; that appellant's back yard abut-
ted on appellee's right of way; there was no fence or
anything else between appellant's back yard and ap-
pellee's right of way to prevent the child from going
on the railroad track; that the mother of appel-
lant's child left her in the back yard a few minutes
before she was killed, with no one with her but her
sister, who was nine years old; that said child was
killed about 130 feet from the nearest street cross-
ing; that she had been on appellee's right of way for
several minutes just prior to her being killed; that
no one was with her when she was killed; that the
train that struck her stopped with the rear end there-
of about 435 feet from where she was struck; and
about eighteen feet west from where she was struck
there is a switch stand, from which a side-track
starts; that for quite a distance from where said
child was killed appellee's track is on a descending
grade from the east to the west; that appellant knew
that trains passed over appellee's track near his
premises frequently; that said child was seven years,
three months, and one day old when she was killed;
that she was physically vigorous for a girl of her age;
that she was in good health; that she was "smart and
intelligent" for a child of her age; that she had at-
tended school for a part of two terms; that both ap-
pellant and his wife often instructed, cautioned, and
commanded their children, including Vonnie, of the
danger of going and playing on the railroad tracks;
that neither the appellant nor his wife, by their neg-
ligence, contributed to the death of said child; that
when said child went and stood upon said track, she
exercised all the prudence and caution which a child
of her age and judgment should have used and exer-
cised, under all the circumstances; that she was not

too young and inexperienced to realize that it was dangerous to go and stand upon the railroad track; that she knew and appreciated the danger of going and standing upon the track.

Interrogatory eighty-nine and answer are as follows: "On October 22, 1896, when Vonnie Dull went and stood on defendant's railroad track, and was there struck and killed by defendant's locomotive, considering her age and judgment, and all the other circumstances proven, and properly inferable from the evidence in this case, is she properly chargeable with contributory. negligence, for doing what she did at and just before she was killed? Ans. Yes."

And, as relating to the same class of facts, we copy in full the following interrogatories and answers: "(94). Did Vonnie Dull, on said day, realize the danger to herself in going and standing upon the defendant's said track?" "Ans. Yes." "(100). Was Vonnie Dull of sufficient age and understanding to realize the danger she would occasion herself on said day by going upon defendant's said railroad track?" "Ans. Yes." "(103). Was the said Vonnie Dull, on the 22nd day of October, 1896, too young and inexperienced to be chargeable with contributory negligence in going upon the defendant's said railroad track?" "Ans. No." "(152). On October the 22, 1896, when Vonnie Dull went and stood upon the defendant's railroad track, and was there struck and killed by defendant's locomotive, considering her age and all the other facts and circumstances proven and properly inferable from the proven facts and circumstances in this case, did her conduct in going and standing upon said track directly contribute to her death?" "Ans. Yes." That the death of said child was caused by reason of appellee's servants running said train at a greater rate of speed than eight miles

Dull *v.* Cleveland, etc., R. Co.

per hour; that if said train had been running at the rate of eight miles per hour, it could have been stopped after the conductor discovered her on the track, and before reaching her; that said child went upon appellee's track by being attracted by a train on the Lake Erie & Western Railroad; that appellee's engineer in charge of and running said locomotive, was "reckless, negligent and careless," in running the same at twenty miles an hour through the city of Muncie; that when the first danger signal was given, said locomotive was about 430 feet from where the child stood; that the engineer discovered said child when he was about 500 feet from her, and the train was running at so high a rate of speed, that he could not stop it before reaching her, after first seeing her; that there was nothing to prevent him from stopping the train, except the speed at which it was running; that the engineer made no effort to stop said train, and could not have stopped it before striking said child on account of the speed at which it was running, and that it could not be stopped until passing about 400 feet beyond where said child was struck, and at the rate of speed at which it was going it would run 500 feet in seventeen and five-tenths seconds.

The special verdict is quite lengthy, consisting of 188 interrogatories, and answers, but we have given an abstract of every fact found that is material to the questions to be decided. From the facts found, it is hardly necessary for us to remark that the appellee was grossly and culpably negligent in running its train in the manner it did, while passing through the corporate limits of the city of Muncie. It is shown that Muncie is a populous city; that appellee's track crosses many streets; and that appellee's train was running at a rate of speed far in excess of that

allowed by an ordinance of said city then in force. True, the special verdict shows that the whistle was sounded, and warning signals given; but these facts do not relieve appellee from actionable negligence. The fact is found that, if the train had been running at the rate of speed fixed by the ordinance, it could have been stopped in time to have averted the injury, after the engineer discovered the danger that was imminent to the girl. This of itself is sufficient to constitute negligence. See *Shirk* v. *Wabash R. Co.*, 14 Ind. App. 126, and authorities there cited.

The next question which naturally arises is, was appellant's child guilty of negligence which contributed to her death? We enter upon the discussion of this question with the facts clearly established that Vonnie Dull was *sui juris*. From the facts found, she was capable of fully understanding the danger which might result from her conduct. We need not here repeat, in detail, the facts found which bear upon this question, but they may be properly grouped in the following statement: She had been in the habit of going on errands, crossing railroad tracks, and making purchases, without assistance; she had attended school a part of two terms; she understood that it was dangerous to stand on railroad tracks when trains were coming; she was used to railroads, and had been instructed of their danger; she was physically and mentally vigorous and intelligent for one of her age; her parents had frequently cautioned her about the danger of going and playing upon railroad tracks; she was not too young and inexperienced to realize that it would be dangerous to go and stand upon a railroad track; she appreciated the danger that might result to her by standing on the track; she was not too young and inexperienced to be chargeable with contributory negligence in doing what she did, and

that her conduct directly contributed to her death. The jury drew two conclusions, which may properly be disregarded by the court: (1) That the child was guilty of contributory negligence, and (2) that in going and standing upon a track in front of an approaching train she exercised such care as a child of her age and judgment should exercise. *Shirk* v. *Wabash R. Co.*, *supra*. These two conclusions seem to be conflicting, and as they are mere conclusions will have to be disregarded. From the facts, which are specifically found and clearly stated, the court must draw both conclusions and inferences. The conclusion which the court must draw is that the child was *sui juris*, and guilty of contributory negligence. The jury found that she exercised care that a child of her age should exercise. It does not seem to us that what children should do is the criterion, but if it were, there is but one reasonable inference which can be drawn from the facts found, and in such case it is the well settled rule that the court must draw that inference. *Cleveland, etc., R. Co.* v. *Moneyhun*, 146 Ind. 147, 34 L. R. A. 141; *Louisville, etc., R. Co.* v. *Costello*, 9 Ind. App. 462; *Shirk* v. *Wabash R. Co.*, 14 Ind. App. 126; *Smith* v. *Wabash R. Co.*, 141 Ind. 92. Many other cases could be cited, but it is useless, as the rule is firmly established.

As to whether or not it was dangerous for Vonnie Dull to stand on appellee's track, under all the facts found, considering especially the fact that she knew it was dangerous, leaves no room for inference as to what a reasonably prudent person would do under like circumstances. It is only where there is room for difference of opinion between reasonable persons, as to the existence of facts from which negligence, if found, must be inferred, or where there is room for difference of opinion as to inferences which might be

fairly drawn from conceded facts, that the question
of negligence must be left to the jury, as one of fact.
*Cincinnati, etc., R. Co.* v. *Grames*, 136 Ind. 39. Where
it is shown that the child fully understood the danger
and peril incident to her conduct, and that she tres-
passed and stood on appellee's track for some two or
three minutes, without taking any precautions what-
ever, looking to her safety, she was undoubtedly
guilty of contributory negligence, and the court must
so declare it, as a matter of law, from the facts found.
What age a child must be, before it can be said it
cannot be chargeable with contributory negligence,
the courts have not determined, and no inflexible
rule could be established; but surely when a child is
old enough to know the difference between danger
and safety, and is of sufficient age and intelligence
to realize and appreciate that a certain course of con-
duct is attended with great danger, then it may be
safely said that he or she can be chargeable with con-
tributory negligence. Thus it was held by the Su-
preme Court that where a boy seven and a half years
old went upon a railroad track, at a point where it
crossed a public highway, to play, and fell asleep on
the track, and was injured by a passing train, he
could not recover, because of contributory negli-
gence. *Krenzer* v. *Pittsburgh, etc., R. Co.*, 151 Ind. 587.
In that case there was a general verdict for appellant,
and answers to interrogatories. It was found spe-
cially by the jury that the boy was of usual and ordi-
nary intelligence; that he was of average physical
strength and activity for a boy of his age; that he
knew the track was a place to run cars and engines
over; that he had sufficient intelligence to know that
engines and cars were liable to pass, and that if he
remained on the track and an engine or car passed
he would be run over and injured; that just before

his injury he was playing jackstones upon the track; that he sat upon the rail of the track with his feet between the rails, and while so sitting fell asleep; it was further found that it was daylight; that the engineer was looking ahead, but did not see the child; that the train was running ten miles an hour, and the bell was not ringing. Howard, J., says: "We are persuaded, from the answers to the interrogatories, that the appellant, notwithstanding his tender youth, was himself guilty of contributory negligence in sitting upon the rail of the track and lying down to sleep, with his leg across the rail. We think he is shown to have had sufficient appreciation of the danger he thus incurred. * * * But to sit upon the track to play, and to lie down there to sleep, with one leg over the rail, seems such a reckless and foolhardy act, that, as we think, a boy found to have sufficient intelligence to comprehend the danger must be held culpable for incurring it." In New York it was held that a boy seven years of age was guilty of contributory negligence in attempting to cross a railroad track in front of an approaching engine, upon what the court designated "a nice calculation of chances." In the last cited case, it was shown that the boy was bright and intelligent; that he had gone to school and was frequently sent on errands by his parents, which required him to cross the railroad track. The case was tried upon the assumption that the boy was *sui juris* and the court held that this implied that he had sufficient mental and physical capacity to be chargeable with some degree of care and prudence, and responsible for some degree of negligence. *Wendell* v. *New York, etc., R. Co.*, 91 N. Y. 420. This court in the case of *Shirk* v. *Wabash R. Co.*, *supra*, held that where a girl twelve years old who was of ordinary intelligence, undertook to cross

a railroad track in front of an approaching engine, which she could have seen if she had looked when five feet from the track, while the bell was ringing, and after the whistle had sounded, was guilty of contributory negligence, and could not recover. In that case, among other facts, the jury found that "in approaching said crossing at the time and place she received the injury, she was a child of immature years, and was exercising the caution and prudence to the best of her judgment, and was without fault or negligence." Notwithstanding the jury found the facts last quoted, yet the court held that such a finding was a mere conclusion, and the general facts found showed contributory negligence on the part of appellant, and that the facts found raised the presumption that she neither looked nor listened, or that looking saw, or listening heard, but deliberately took the risk of attempting to cross notwithstanding the approaching train. In a concurring opinion Davis, J., said: "The primary facts found in this case are not, in my opinion, sufficient to warrant the final inference or conclusion that the appellant was in the exercise of due care at the time she received the injuries."

In a recent case in Wisconsin, it was held to be contributory negligence for a boy sixteen years of age to stand upon a railroad track with his back to an engine, which was then standing still only twenty feet from him, but liable to start at any moment. *Lofdahl* v. *Minneapolis, etc., R. Co.*, 88 Wis., 421, 60 N. W. 795. In that case the court said: "Such conduct cannot be made ordinary care even by the verdict of a jury." In *Twist* v. *Winona, etc., R. Co.*, 39 Minn. 164, 39 N. W. 402, it was held to be contributory negligence as a matter of law for a boy ten years old to play upon a turn-table, when he had been warned against so do-

ing, although the jury found that he did not fully understand the danger. The supreme court of Massachusetts held that a boy five and one-half years old was guilty of contributory negligence, as a matter of law, in attempting to cross a street five or six feet in front of a horse and wagon, which were going about five miles an hour. The court said: "While he is only bound to show that he exercised such care as ordinary boys of his age and intelligence are accustomed to exercise under like circumstances, the standard is the conduct of boys who are ordinarily careful." *Hayes* v. *Norcross,* 162 Mass. 546, 39 N. E. 282. In *Collins* v. *South Boston Railroad,* 142 Mass. 301, 7 N. E. 856, it was said: "It would seem that, if children unreasonably, intelligently, and intentionally run into danger, they should take the risks, and that children, as well as adults, should use the prudence and discretion which persons of their years ordinarily have, and that they cannot be permitted with impunity to indulge in conduct which they know, or ought to know, to be careless, because children are often reckless and mischievous."

In many of the cases to which we have referred, it was not shown affirmatively that the children understood and realized the danger that threatened them, but nevertheless it was held that they must be presumed to have so realized and understood, and that they were therefore negligent in assuming the risk incident to their surroundings. So we see at a glance that the case before us is a much stronger one, for here it is expressly and specifically found that Vonnie Dull had been duly warned, knew and realized the danger she was in, and knew that peril to her was incident to her position. We think the rule is well settled that where a person voluntarily goes into a place of danger, which he understands and fully

realizes, he takes upon himself the risk, and there can be no recovery for resulting injury, unless such injury is wilfully inflicted.

Appellant contends that even if Vonnie Dull was guilty of negligence, it does not bar a recovery, under the facts found, because the engineer was guilty of negligence after he discovered her. By this contention, appellant seeks to invoke the doctrine that though a person may have subjected himself to injury by his own negligence, yet he may recover for such injury, if the person inflicting it could have avoided it after discovering his danger, or if he failed to use ordinary care. In *Lake Erie, etc., R. Co.* v. *Juday,* 19 Ind. App. 436, it was said: "It is sound doctrine, strongly entrenched by the authorities, that when one person sees another in danger or peril, from which he is unable to extricate himself with reasonable care and prudence, it is the highest duty of such person so to act as not to increase the peril, and if he does act in a manner to increase the danger, with a full knowledge of the facts, it is negligence, for which he may be required to respond in damages." Of many cases so holding we cite the following." *Citizens' St. R. Co.* v. *Lowe,* 12 Ind. App. 47; *Cincinnati, etc., R. Co.* v. *Long, Adm.,* 112 Ind. 166; *Indianapolis, etc., R. Co.* v. *Pitzer,* 109 Ind. 179; *Pittsburgh, etc., R. Co.* v. *Judd, Adm.,* 10 Ind. App. 213. Judge Thompson states the rule as follows: "Perhaps a better expression of this rule is, that although the plaintiff has negligently exposed himself or property to an injury, yet if the defendant, after discovering the exposed situation, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recover damages." Thompson on Negligence, 1157 note. See, also, Beach on Cont. Neg., section 54; *Brown* v. *Lynn,* 31 Pa. St. 510; *Barker* v. *Savage,* 45 N. Y. 191; *Morris*

v. *Chicago, etc., R. Co.*, 45 Ia. 29; *Grand Trunk R. Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. 679.

And so we think the rule would apply in a case where a person had subjected himself to danger, though he was unconscious of impending peril, if the person about to inflict the injury could, after discovering the peril, have averted it by the use of ordinary care and diligence. But this doctrine, as wholesome and sound as it is, and tenaciously as it should be adhered to and enforced, is not applicable here, under the facts found by the jury. Here we have a case where the injured party subjected herself by her own negligence, to imminent peril; she was unconscious of her impending danger; appellee's engineer discovered her danger when he came within about 500 feet of her, and then as the jury found, it was impossible for him to stop his engine before reaching her. He did all he could do, by giving danger signals in the hope that the child might be warned and extricate herself from peril. True, the engineer did not apply the air brakes, but it is found that if he had, he could not by any means within his power have stopped the train, and hence in the emergency he did all that was possible for him to do, as above indicated. His failure to attempt to stop the train under these facts, even if negligent, was not therefore the proximate cause of the injury, but the proximate cause was the negligence of the child. By her own negligence she placed herself where it was impossible for the engineer to do anything to save her from injury, after he discovered her peril. It looks to us, from all the facts found, that the engineer did all that was possible for him to do. In any event, an engineer running a locomotive engine cannot be expected to act in an emergency in the "twinkling of an eye," with the coolness and forethought that one would after he has had

time to deliberate and plan. Here the engineer was running his engine at the rate of twenty-five miles per hour; he discovered the girl on the track when he was only 500 feet from her; in seventeen seconds his engine would be upon her; at the speed he was running, he is presumed to have known that there was no possible means by which he could stop. He gave the danger signals in the hope and reasonable expectation, that the girl would heed them, as the only possible means of her escape, and under these facts we cannot say that he was guilty of actionable negligence after discovering her.

In *Kirtley* v. *Chicago, etc., R. Co.,* 65 Fed. 386, 391, it was said: "The evidence shows that the engineer did make an effort to notify the deceased of his danger, while it shows no response to this admonition on the part of the deceased. This, at least, manifests a willingness upon the part of the engineer to do all in his power to save the deceased from harm; and we cannot justly presume in the face of such actual efforts, that the engineer would have relaxed any efforts that under the stress of circumstances might have occurred to an agitated mind to avert the accident. We are not to judge of the care exercised under circumstances of this kind, by a deliberate retrospect of the facts, because we can never place ourselves, by a calm analysis of the features of these occurrences, in precisely the same frame of agitation as those who are actors in such events. If the engineer did all that reasonably occurred to him to do, confronted, as he was, by a pressing emergency, we cannot censure him because, after deliberate reflection over the events, we can point out something else which he might have done to have averted the calamity. The extremity of the situation was not of the engineer's making. It was created by the delib-

erately unlawful act of the deceased, and it would be unjust to charge the engineer and defendant with fault because his mind did not operate with the same deliberation which we have a right to expect if he were confronting an anticipated occasion usually within the line of his experience." The above language is of great force, and peculiarly applicable to the facts in this case. We have already said that appellee was negligent in running its train through a populous city at the speed it was going, but this antecedent negligence cannot be invoked or considered, so as to bring it within the rule for which appellant contends. Under that rule we can only consider the conduct of appellee's servants after discovering the peril of the girl. There are many cases so holding, of which we cite the following: *Terre Haute, etc., R. Co.* v. *Graham*, 95 Ind. 286; *St. Louis, etc., R. Co.* v. *Monday*, 49 Ark. 257, 4 S. W. 782; *Parker* v. *Pennsylvania Co., supra; Baltimore, etc., Co.* v. *State*, 78 Md. 409, 28 Atl. 397; *Indiana Stone Co.* v. *Stewart*, 7 Ind. App. 563; *Kirtley* v. *Chicago, etc., R. Co., supra; Woodruff* v. *Northern Pac. R. Co.*, 47 Fed. 689; *Blanchard* v. *Lake Shore, etc., R. Co.*, 126 Ill. 416, 18 N. E. 799. Upon this question other authorities and further discussion seems unnecessary.

But there is an additional reason why appellant cannot recover, under the facts found, and that is, Vonnie Dull is shown to have been a trespasser, and there is no finding of wilful killing. It is shown that where the child was killed, was over 100 feet from the nearest street crossing, upon the private grounds and track of appellee. Because of her tender years, she was no less a trespasser. In *Baltimore, etc., R. Co.* v. *Bradford*, 20 Ind. App. 348, it was held that a child two years old, who had wandered on a railroad track, not

at a public crossing, was a trespasser. It is well settled in this and other jurisdictions, that the only duty which a railroad company owes to trespassers upon its right of way and tracks, is to refrain from wilfully injuring them. It owes them no duty of active vigilance and is not liable for mere negligence. In support of this proposition, we cite the following cases: *Terre Haute, etc., R. Co.* v. *Graham, supra; Jeffersonville, etc., R. Co.* v. *Goldsmith,* 47 Ind. 43; *Pennsylvania Co.* v. *Meyers, Adm.,* 136 Ind. 242; *Kirtley* v. *Chicago, etc., R. Co., supra; Cleveland, etc., R. Co.* v. *Tartt, supra; Nicholson* v. *Erie R. Co.,* 41 N. Y. 525; *Walsh* v. *Fitchburg R. Co.,* 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724; *Philadelphia, etc., R. Co.* v. *Hummell,* 44 Pa. St. 375; *Duff* v. *Allegheny, etc., R. Co.,* 91 Pa. St. 458; *Toomey* v. *Southern Pac. R. Co.,* 86 Cal. 374, 24 Pac. 1074; *Mulherrin* v. *Delaware, etc., R. Co.,* 81 Pa. St. 366; *Wright v. Boston, etc., R. Co.,* 142 Mass. 296, 7 N. E. 866; *Morrisey* v. *Eastern R. Co.,* 126 Mass. 377; *Baltimore, etc., R. Co.* v. *State,* 62 Md. 479; *Cauley* v. *Pittsburgh, etc., R. Co.,* 95 Pa. St. 398; *Illinois, etc., R. Co.* v. *Godfrey,* 71 Ill. 500. In *Jeffersonville, etc., R. Co.* v. *Goldsmith, supra,* the court said: "But between the stations and public crossings the track belongs exclusively to the company, and all persons who walk, ride, or drive thereon are trespassers, and if such persons walk, ride, or drive thereon at the sufferance, or with the permission of the company, they do so subject to all the risks incident to so hazardous an undertaking." In *McClaren* v. *Indianapolis, etc., R. Co.,* 83 Ind. 319, it was said: "The law is, that between stations and public crossings a railroad track belongs exclusively to the railroad company, and that all persons who walk, ride, or drive thereon are trespassers, and

if such persons do so at the sufferance or by the permission of the company, they do so subject to the risks incident to so hazardous an undertaking, and if injured by a train of the company there is no liability, unless the injury is wilful." In *Cleveland, etc., R. Co.* v. *Tartt, supra,* Judge Baker said: "As he (the person killed) was a trespasser, no action will lie against the company causing his death, unless the act of its employes in charge of the train was wilful. A trespasser cannot maintain an action where the tort complained of consists of nothing more than the omission to exercise care." We also cite the following Indiana cases: *Ivens* v. *Cincinnati, etc., R. Co.,* 103 Ind. 27; *Cleveland, etc., R. Co.* v. *Adair,* 12 Ind. App. 569; *Cleveland, etc., R. Co.* v. *Stephenson,* 139 Ind. 641; *Pennsylvania Co.* v. *Meyers, supra; Faris* v. *Hoberg,* 134 Ind. 269.

The special verdict does not find a wilful killing, and hence there can be no recovery, even if we assume that the theory of the complaint is based upon wilfulness. Other questions presented by the assignment of errors are waived by a failure to discuss them. The trial court did not err in rendering judgment for appellee on the special verdict, and there is no reversible error in the record. Judgment affirmed.

Robinson and Comstock, J. J., concur in the conclusion.